# 24-2785-cv

## United States Court of Appeals

*for the*

## Second Circuit

MONICA MILLER, SUZANNE ABDALLA,

*Plaintiffs-Appellants,*

— v. —

LETITIA JAMES, Individually and in her official capacity as
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

ROBERT J. MUISE
AMERICAN FREEDOM LAW CENTER
*Attorneys for Plaintiffs-Appellants*
P.O. Box 131098
Ann Arbor, Michigan 48113
(734) 635-3756

CP COUNSEL PRESS    (800) 4-APPEAL • (130636)

## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Plaintiffs-Appellants state as follows:  Plaintiffs-Appellants are individuals and not corporate parties.

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES FOR REVIEW ...............................................2

STATEMENT OF THE CASE................................................................3

I.      Procedural Background ...........................................................3

II.     Decision Below.....................................................................4

        A.      Standing Decision......................................................4

                1.      First Amendment Claims ...................................4

                2.      Fourteenth Amendment Claim...............................6

        B.      Defamation Decision...................................................7

                1.      Prong One: "Of and Concerning"...........................8

                2.      Prong Four: Falsity of the Defamatory Statement.....................9

                3.      Prong Five: Damages and Defamation *Per Se*..........................12

III.    Statement of Facts.................................................................13

STANDARD OF REVIEW ..................................................................20

SUMMARY OF THE ARGUMENT .......................................................23

ARGUMENT ...............................................................................24

I.    Plaintiffs Have Standing to Advance Their Claims ......................................24

      A.    Personal Injury .................................................................................24

      B.    Fairly Traceable................................................................................29

      C.    Likely to Be Redressed ....................................................................30

      D.    Plaintiffs Have Standing to Advance Their Constitutional Claims ....33

            1.    First Amendment.......................................................................33

            2.    Equal Protection .......................................................................36

II.   Defendant James' Statements Are Actionable as Defamation......................38

      A.    Defendant's Statements Are Actionable as Defamation *Per Se* .........38

      B.    Defendant's Defamatory Statements Were "of and Concerning" Plaintiffs
            ..........................................................................................................43

CONCLUSION ..........................................................................................................45

CERTIFICATE OF COMPLIANCE ........................................................................46

# TABLE OF AUTHORITIES

**Cases** **Page**

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001) ..................................................................39

*Allen v. Wright*,
468 U.S. 737 (1984) .............................................................................24

*Am. Freedom Law Ctr., Inc. v. Nessel*,
No. 1:19-cv-153, 2020 U.S. Dist. LEXIS 60622 (W.D. Mich. Jan. 15, 2020) .......27

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .............................................................................36

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................21

*Barenblatt v. United States*,
360 U.S. 109 (1959) .............................................................................36

*Barry's Cut Rate Stores, Inc. v. Visa, Inc.*,
No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 205335
(E.D.N.Y. Nov. 20, 2019) ......................................................................22

*Bates v. City of Little Rock*,
361 U.S. 516 (1960) .........................................................................33, 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................21, 25, 26

*Bench Billboard Co. v. City of Cincinnati*,
675 F.3d 974 (6th Cir. 2012) ..................................................................37

*Bible Believers v. Wayne Cnty.*,
805 F.3d 228 (6th Cir. 2015) .............................................................36, 37

iv

*Bldg. Indus. Elec. Contrs. Ass'n ex rel. United Elec. Contrs. Ass'n v. City of N.Y.*,
678 F.3d 184 (2d Cir. 2012)...................................................................21

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
475 F.3d 524 (3d Cir. 2007)...................................................................25

*Brady v. Ottaway Newspapers, Inc.*,
445 N.Y.S.2d 786 (N.Y. App. Div. 1981) ...............................................44

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021)
.................................................................................................................39

*Carlucci v. Poughkeepsie Newspapers, Inc.*,
57 N.Y.2d 883, 442 N.E.2d 442, 456 N.Y.S.2d 44 (1982)......................43

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016).............................................................22, 29

*Celle v. Filipino Reporter Enters.*,
209 F.3d 163 (2d Cir. 2000)..................................................................39

*Church of Scientology Int'l v. Behar*,
238 F.3d 168 (2d Cir. 2001)..................................................................43

*Church of Scientology Int'l v. Time Warner*,
806 F. Supp. 1157 (S.D.N.Y. 1992) .......................................................44

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................7

*Clark v. Library of Congress*,
750 F.2d 89 (D.C. Cir. 1984) ...........................................................35, 36

*Connection Distrib. Co. v. Reno*,
154 F.3d 281 (6th Cir. 1998) ...............................................................34

*Cutler v. United States HHS*,
797 F.3d 1173 (D.C. Cir. 2015)..............................................................22

*De Gregory v. Att'y Gen. of N.H.,*
383 U.S. 825 (1966) ................................................................36

*Doe v. Nat'l Bd. of Med. Exam'rs,*
199 F.3d 146 (3d Cir. 1999) .....................................................29

*Elias v. Rolling Stone LLC,*
872 F.3d 97 (2d Cir. 2017) .......................................................43

*Famous Horse Inc. v. 5th Ave. Photo Inc.,*
624 F.3d 106 (2d Cir. 2010) .....................................................21

*Fed. Election Com. v. Mass. Citizens for Life, Inc.,*
479 U.S. 238 (1986) ................................................................28

*Fetler v. Houghton Mifflin Co.,*
364 F.2d 650 (2d Cir. 1966) .....................................................43

*Foretich v. United States,*
351 F.3d 1198 (D.C. Cir. 2003) ...............................................25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
528 U.S. 167 (2000) ...........................................................30, 31

*Geisler v. Petrocelli,*
616 F.2d 636 (2d Cir. 1980) .....................................................43

*Gibson v. Fla. Legislative Comm.,*
372 U.S. 539 (1963) ................................................................36

*Grogan v. KOKH, LLC,*
256 P.3d 1021 (Okla. Civ. App. 2011) ....................................40

*Gully v. NCUA Bd.,*
341 F.3d 155 (2d Cir. 2003) .....................................................25

*Healy v. James,*
408 U.S. 169 (1972) ................................................................34

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951)......................................................................28

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017)........................................................24

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021) .........................................8

*Kimmerle v. N.Y. Evening Journal*,
262 N.Y. 99, 186 N.E. 217 (NY 1933) ......................................39

*Laird v. Tatum*,
408 U.S. 1 (1972)................................................................25, 26

*LeBlanc v. Skinner*,
955 N.Y.S.2d 391 (N.Y. App. Div. 2012) ...................11, 40, 41

*Lukashok v. Concerned Residents of North Salem*,
554 N.Y.S.2d 39 (N.Y. App. Div. 1990) .....................40, 41, 42

*Meese v. Keene*,
481 U.S. 465 (1987)...........................................25, 26, 28, 30, 34

*NCAA v. Governor of N.J.*,
730 F.3d 208 (3d Cir. 2013)........................................................25

*NAACP v. Ala.*,
357 U.S. 449 (1958)...........................................33, 34, 35, 36

*NAACP v. Button*,
371 U.S. 415 (1963)......................................................................33

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)......................................................................43

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019).........................................................8

*Parsons v. United States DOJ*,
801 F.3d 701 (6th Cir. 2015) ................................................................26, 30, 31, 32

*Police Dep't of Chi. v. Mosley*,
408 U.S. 92 (1972) ................................................................................................37

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984) ..............................................................................................35

*Rooks v. Krzewski*,
No. 306034, 2014 Mich. App. LEXIS 604 (Mich. Ct. App. Apr. 3, 2014)............32

*Sacks v. Stecker*,
60 F.2d 73 (2d Cir. 1932) ......................................................................................11

*Salvation Army v. Dep't of Cmty. Affairs*,
919 F.2d 183 (3d Cir. 1990) ..................................................................................35

*Smith v. Nixon*,
807 F.2d 197 (D.C. Cir. 1986) ..............................................................................32

*Socialist Workers Party v. Att'y Gen.*,
419 U.S. 1314 (1974) .............................................................................................36

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ..............................................................................................24

*United States v. Accra Pac, Inc.*,
173 F.3d 630 (7th Cir. 1999) .................................................................................29

*Van Der Linden v. Khan*,
535 S.W.3d 179 (Tex. App. 2017).........................................................................40

*Warth v. Seldin*,
422 U.S. 490 (1975) .........................................................................................22, 24

*Zherka v. Amicone*,
634 F.3d 642 (2d Cir. 2011)...................................................................................13

**Statutes / Rules**

18 U.S.C. § 248................................................................................14

28 U.S.C. § 1291.................................................................................2

28 U.S.C. § 1331.................................................................................2

28 U.S.C. § 1332.................................................................................2

28 U.S.C. § 1343.................................................................................2

28 U.S.C. § 1367(a)............................................................................2

N.Y. Civ. Rights Law § 79-m...........................................................14

N.Y. Penal Law § 490.00, *et seq*...............................9, 17, 18, 40

N.Y. Pen. Law § 490.05.....................................................................9

Fed. R. Civ. P. 8..............................................................................21

Fed. R. Civ. P. 12(b)..........................................................3, 12, 21, 22

**Other**

Restatement (Second) of Torts, § 564A.........................................44

https://ag.ny.gov/attorney-general-james-sues-militant-anti-abortion-group-invading-clinics-and-blocking-access ...................................................10, 16, 28

https://www.redroserescue.com/.......................................................15

https://www.washingtonexaminer.com/policy/healthcare/new-york-ag-anti-abortion-terrorist-lawsuit ..............................................................................16

https://www.washingtontimes.com/news/2023/jun/8/letitia-james-sues-block-pro-life-terrorists-abort/...........................................................................16

ix

## INTRODUCTION

Defendant Letitia James, the Attorney General of New York, has weaponized her office to publicly attack political opponents, falsely declaring that private citizens who oppose abortion and associate with Red Rose Rescue are "terrorists" and belong to a "terrorist group." Recent events in Israel should be a sober reminder that such false labeling, particularly by the chief law enforcement officer of the state, is exceedingly harmful and injurious to those who associate with Red Rose Rescue, which includes Plaintiffs. But that was the very purpose of Defendant James' actions. She chose her words carefully and intentionally, and they were made with actual malice, hatred, ill will, and spite, and for the unlawful purpose of suppressing the activities of pro-lifers who associate with Red Rose Rescue. Defendant James' reckless and intentional disregard for the truth is inexcusable, particularly since she is the Attorney General and has thus placed the power of the government, with its authority, presumed neutrality, and assumed access to all the facts, behind an appellation *designed* to reduce the effectiveness of the Red Rose Rescue, and thus the rights of those who associate with Red Rose Rescue, in the eyes of the public.

The district court erred by dismissing this case. This Court should reverse.

## STATEMENT OF JURISDICTION

On July 7, 2023, Plaintiffs filed this federal action, alleging violations arising under the First and Fourteenth Amendments to the United States Constitution and

- 1 -

New York defamation law. (Compl., R.1, A-5). The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over the federal claims and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a). The district court also had jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

Defendant James filed a motion to dismiss on October 12, 2023. (Def.'s Mot. to Dismiss, R.8; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, R.8-3). Plaintiffs filed a response in opposition to Defendant's motion on October 30, 2023. (Pls.' Resp., R.10).

On September 27, 2024, the district court granted Defendant's motion, dismissing the case. (Mem.-Decision & Order, R.15, A-44). Judgment was entered the same day. (J., R.16, A-72).

On October 18, 2024, Plaintiffs filed a timely notice of appeal. (Notice of Appeal, R.17, A-74). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES FOR REVIEW

I.     Whether Plaintiffs have standing to advance their claims arising under the First and Fourteenth Amendments when they have alleged personal injuries—the chilling effect on their fundamental rights and reputational harm—that are fairly

traceable to Defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

II.    Whether Plaintiffs have stated a plausible claim for defamation under New York law when Defendant, the New York Attorney General and top law enforcement officer for the state, publicly declared that Plaintiffs are "terrorists" belonging to a "terrorist group," the declarations were made during an official press conference announcing a civil lawsuit against the organization and individuals belonging to the organization, and the Attorney General does not have immunity for the statements.

## STATEMENT OF THE CASE

### I.    Procedural Background.

This lawsuit was filed on July 7, 2023, alleging violations of the First and Fourteenth Amendments and New York state law (defamation). (Compl., R.1, A-5). Defendant filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. to Dismiss, R.8; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, R.8-3). Plaintiffs filed a response in opposition to Defendant's motion on October 30, 2023. (Pls.' Resp., R.10).

On September 27, 2024, the district court granted Defendant's motion, concluding that Plaintiffs lack standing to advance their constitutional claims and that they failed to state a plausible claim for defamation. (Mem.-Decision & Order, R.15,

A-44).  Judgment was entered the same day.  (J., R.16, A-72).  This appeal follows.

## II.    Decision Below.

The decision below disregarded the standard of review at the pleading stage, misrepresented the allegations in the Complaint, and was internally inconsistent. Indeed, the court had to contort the facts and law to ensure that this lawsuit against the New York Attorney General was dismissed.  Justice requires reversal.

### A.    Standing Decision.

The district court dismissed Plaintiffs' claims arising under the First and Fourteenth Amendments on standing grounds.

#### 1.    First Amendment Claims.

In its Memorandum-Decision Order, the court stated that "Plaintiffs have not alleged chilling or future risk of chilling of their speech or expressive association to justify either a declaratory judgment or injunctive relief."  (Mem.-Decision & Order at 9, R.15, A-52).  Per the court, "[s]ince Plaintiffs have not alleged actual chilling, the Court turns to whether they have alleged some other concrete harm.  Plaintiffs offer two theories of concrete harm: reputational damage and increased risk of disfavored government treatment. . . . ***Neither are persuasive***."  (*Id*.) (emphasis added).

With regard to the reputational harm injury, the court claimed that "Plaintiffs do not provide anything beyond conclusory assertions that their public reputation has been harmed" and that "Plaintiffs do not establish that any reputational harm actually

materialized or was likely to materialize."[1] (*Id*. at 10, A-53). The court further asserted that "the Court finds that Plaintiffs have not alleged reputational harm sufficient to establish an injury-in-fact because they have not established that a concrete harm has occurred or is likely to occur." (*Id*. at 11, A-54).

Regarding what the court described as an "increased risk of disfavored government treatment," the court stated that "Plaintiffs do not allege that they have actually experienced or are likely to experience any of these possible harms, which distinguishes their experience from the experiences of the plaintiffs in their cited cases." (*Id*.). However, the district court evidently overlooked the elephant in the room: the very reason for the press conference was because the Attorney General wanted to announce with great public fanfare *that she was pursuing a civil action against Red Rose Rescue and several pro-lifers*, which, by any reasonable person's standard, would constitute adverse governmental action. (*See* Compl. ¶ 28, 34, R.1, A-11, 12).

---

[1] The district made the rather misleading assertion that "Plaintiffs do not allege that they were *formally* designated as 'terrorists.'" (Mem.-Decision & Order at 11 [emphasis added], R.15, A-54). This assertion misses the mark because the crux of the reputational harm (and defamation claim) is the fact that New York's *top law enforcement officer*, the Attorney Generally, publicly declared that Plaintiffs were "terrorists" and belonged to a "terrorist group." The declarations are harmful precisely because they come from a senior government official that the general public views as the top law enforcement officer with the "authority, presumed neutrality, and assumed access to all the facts" to make such a determination. (Compl. ¶ 52, R.1, A-16). The designation did not come from a janitor, a member of the press, or some other low-level government employee or private citizen—it came directly from the Attorney General.

The district court also stated that "Plaintiffs do not specifically allege that their claim of defamation itself is sufficient to allege standing for the constitutional claims. In any event, the Court is skeptical that allegations of defamation without specific damages are adequate to create standing for either a free expression or free association claims." (Mem.-Decision & Order at 12, R.15, A-55).

Per the Court, "[i]n summary, the Court finds that Plaintiffs have not alleged standing to pursue either declaratory or injunctive relief for their free expression and expressive association claims, because they have failed to allege that they have experienced or will likely experience chilling or another related concrete harm." (*Id*.). The district court is wrong.

### 2.  Fourteenth Amendment Claim.

Per the court, "[a]s discussed above, the Court is unpersuaded that Plaintiffs have alleged an injury-in-fact related to their reputation" (*id*. at 13, A-56) to advance their claim arising under the Fourteenth Amendment.  "Since Plaintiffs do not allege that they have been personally affected, by or suffered any actual harm from, Defendant's statements, they have not established their standing to seek declaratory relief." (*Id*. at 14, A-57).  The district court summarized its decision as follows:

> Plaintiffs have not alleged how they are at risk of future harm to their rights under the Fourteenth Amendment.  Their claims appear to allege that the Defendant's press conference creates a likelihood that Plaintiffs will be subject to "government investigation, surveillance, punishment, condemnation, and other disfavored treatment, and it has tarnished Plaintiffs' public reputation and subjects Plaintiffs to public retribution."

- 6 -

> Compl. ¶ 46. As discussed above, Plaintiffs have not alleged that they have a "reasonable expectation" of these future harms sufficient to survive the Supreme Court's guidance in cases like *Clapper* [*v. Amnesty Int'l USA*, 568 U.S. 398 (2013)].[2] As to the alleged damage to reputation, Plaintiffs have neither alleged how they would suffer continuing defamation absent an injunction barring speech nor that the speech is likely to continue.[3] Absent more, Plaintiffs do not have standing to seek injunctive relief on their Equal Protection claims.

(*Id*. at 14, A-57).

As discussed in the Argument section below, the district court's decision is contrary to the law and patently wrong. Indeed, the court impermissibly held Plaintiffs to a heightened pleading requirement, demanding a "high threshold" of injury contrary to what the U.S. Supreme Court, this Court, other federal appellate courts, and the Federal Rules of Civil Procedure require.

## B.  Defamation Decision.

The district court held that Plaintiffs failed to state a plausible claim for

---

[2] As the undisputed facts show, the Attorney General has already targeted Red Rose Rescue and pro-lifers for adverse government action by bringing the civil lawsuit against the organization and those associated with it. The harm alleged in the Complaint is hardly speculative, as the district court incorrectly concluded. This case is not *Clapper*, where all the alleged harm was completely speculative. Moreover, in this case, Plaintiffs, who are Red Rose Rescue participants, were directly and expressly targeted by law enforcement. That was not the case with the challengers in *Clapper*.

[3] Here, the district misses the point that the defamation is ongoing as the press conference is part of a public record, and it is posted on the Attorney General's official website. (*See* Compl. ¶ 33 [citing website where video of press conference is posted and available for viewing to this day], R.1, A-12). Moreover, Plaintiffs specifically alleged that the defamation would continue. (Compl. ¶ 41, R.1, A-14).

- 7 -

defamation under New York law.[4]  As stated by the court:

> Under New York law, to state a claim for defamation, a plaintiff must
> allege "(1) a written [or spoken] defamatory statement of and concerning
> the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the
> defamatory statement, and (5) special damages or *per se* actionability."
> *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 169–70
> (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d
> Cir. 2019)) (alterations in original).

(Mem.-Decision & Order at 16, R.15, A-59).  The court noted that the parties do not

contest the second or third prongs of this test.  Consequently, the court focused its

decision on prongs one, four, and five.  (*Id.*).

### 1.    Prong One: "Of and Concerning."

With regard to prong one, "of and concerning," the court noted that

"Defendant's statements did not name Plaintiffs"; that "Plaintiff Abdalla is not named

at all in the AG Complaint and was not mentioned in the press conference, *nor has she*

*alleged that she would be publicly known as a member of Red Rose Rescue* other than

by stating that she has previously 'spoken to the media on behalf of Red Rose

Rescue'";[5] and that "[w]hile Plaintiff Miller is referenced in the AG Complaint, she

---

[4] Having found that the court lacked jurisdiction to decide Plaintiffs' constitutional
claims for lack of standing, the court concluded that it had jurisdiction to decide
Plaintiffs' state law claim based on diversity jurisdiction. (Mem.-Decision & Order at
14-15, R.15, A-57-58).

[5] Like much of the district court's faulty decision, this reference to the allegations in
the Complaint is demonstrably false.  As expressly stated in the Complaint (after
discussing the many activities that Plaintiff Abdalla engages in as part of the Red Rose
Rescue, including addressing the media publicly), Plaintiff Abdalla "*is publicly*
*known as someone who is associated with Red Rose Rescue.*"  (Compl. ¶ 20

was not mentioned in the press conference." (*Id*. at 18, A-61). Nevertheless, the court concluded that "[s]ince neither Plaintiffs nor Defendant have definitively established the number of individuals who are members of Red Rose Rescue, the Court cannot conclusively determine the applicability of the group libel doctrine based on the size of the group. . . . Accordingly, the Motion is denied on this basis." (*Id*. at 18-19, A-61-62).

While the district court did not rule against Plaintiffs on this prong of the test, as discussed in the Argument section further below, it would have been error to do so.

### 2.    Prong Four: Falsity of the Defamatory Statement.

With regard to prong four, the district court ultimately agreed with Defendant that the alleged defamatory statements "are not capable of being proven false because they are best understood as non-actionable statements of opinion." (*Id*. at 19, A-62). The court explained as follows:

> While "terrorist" as a term is not specifically defined in New York's laws governing terrorism, *see* N.Y. Pen. L. § 490.05, the word "terrorist" can be legally understood to refer to someone who commits acts of terrorism proscribed by New York's criminal code, *see* N.Y. Pen. L. §§ 490.00 *et seq*.  However, as Defendant states, the word "terrorist" also refers more generally to those who engage in "***the use of violent action in order to achieve political aims or to force a government to act***." Mot. at 21 n.5.  Given that multiple meanings of the word "terrorist" are available—and the fact that, despite Defendant's status as the Attorney General of New York, the statement was made in a press conference rather than a complaint or courtroom and was not accompanied with any language stating or suggesting a forthcoming charge linked to

[emphasis added], R.1, A-9).

terrorism—the Court is not ***persuaded*** that *Defendant intended to use the specific, legal definition of the word "terrorist."*[6]  As such, the Court is not convinced that the language at issue has a precise meaning that is readily understood.

(Mem.-Decision & Order at 22, R.15, A-65).  Contrary to the court's conclusion, if anyone knows the injurious meaning of the word "terrorist," it is the good citizens of New York who directly suffered the horrific effects of terrorism on 9/11.

The court next concluded that "[w]hether someone meets the colloquial meaning of 'terrorist' is likely to be a matter of judgment or opinion. . . .  Therefore, the imprecise nature of Defendants' statements suggests those statements are not capable of being proven false."  (*Id*. at 22-23, A-65-66).  But of course, the defamatory declaration was made by the top law enforcement officer for the State of New York.  And Plaintiffs could readily prove that the activities of Red Rose Rescue are peaceful and nonviolent, thus proving the falsity of the "terrorist" claim (including the falsity of the claim if one were to accept the definition offered by Defendant herself: "***the use of <u>violent</u> action in order to achieve political aims or to force a government to act***.").[7]

The court next "consider[ed] the context in which the statement was delivered and whether the circumstances suggest that the statement is being delivered as an

_____

[6] Yet again, the district court is making conclusions based on its own rejection of the allegations in the Complaint, which is impermissible.

[7] As Defendant James states in the video, "I refer to them as terrorists because of their activities." (*See* https://ag.ny.gov/attorney-general-james-sues-militant-anti-abortion-group-invading-clinics-and-blocking-access).

- 10 -

opinion or fact." As the district court noted, in her remarks, Defendant stated that she "refer[s] to them as terrorists *because of their activities*," further noting that "Defendant made these comments in a press conference describing the AG Complaint, which alleged that associates of Red Rose Rescue 'engaged in coordinated and repeated ***illegal conduct***, ranging from criminal trespass to barricading clinic entrances in order to block access to abortion services in New York.'" (*Id*. at 23 [emphasis added], A-66). As the court noted:

> Plaintiffs argue that the context of the speech makes it less likely the statements presented were received by listeners as opinion. They distinguish between *LeBlanc*, which involved speech in an online forum, and the "press conference to address Red Rose Rescue and to issue official statements of her office about this organization and those who associate with it," which "placed the power of the state government, with its authority, presumed neutrality, and assumed access to all the facts, behind a false accusation *designed* to target pro-lifers associated with Red Rose Rescue." Resp. at 23. However, the Court is ***unpersuaded***. Since Defendant made this speech in a press conference, rather than in a complaint, hearing, or trial, it is unlikely a listener would receive the statement as a criminal charge of terrorism.[8] The mere fact that a government official makes the challenged speech is not enough to convert the speech into a defamatory statement.

---

[8] Of course, if the Attorney General made these statements in the context the district court suggests, she would have complete immunity for doing so. *See Sacks v. Stecker*, 60 F.2d 73, 75 (2d Cir. 1932) ("Such federal courts as have dealt with the question of liability for defamatory matter published in the course of judicial proceedings have, like the state courts, held that parties to such proceedings have absolute immunity for defamatory statements if they fairly relate to the subject-matter of the controversy."). ***The fact that the Attorney General did not bring a criminal complaint against Red Rose Rescue for engaging in terrorism is further evidence demonstrating the falsity of the Attorney General's statements***.

Yet again, this was not just any "government official" making this public declaration. This was the top law enforcement officer of the state. And, yet again, the district court is assuming the role of a juror deciding the case on the merits (*i.e.*, he was "unpersuaded") rather than a judge deciding a motion to dismiss brought pursuant to Rule 12(b)(6). The court's decision should be reversed.

### 3. Prong Five: Damages and Defamation *Per Se*.

The district court attempted to distinguish the cases cited by Plaintiffs which held that accusing someone of being a terrorist is defamation *per se*, by claiming that "Defendant did not specifically accuse Plaintiffs of working with named, designated terrorist groups" nor did Defendant "link Plaintiffs to specific terrorist threats from other groups or events like a school shooting." (Mem.-Decision & Order at 26, R.15, A-69). The district court then concluded that "[t]hese cases [cited by Plaintiffs] reflect the rule that a statement referring to potential criminal activity becomes defamation *per se* only when it suggests guilt or at least a charge related to a specific incident, rather than 'rhetorical hyperbole.'" (*Id.*). But here, Defendant's declarations that Plaintiffs are "terrorists" and that they belong to a "terrorist group" (Red Rose Rescue) were unequivocal. The statements were not meant as a joke or as hyperbole. Defendant was emphatic, and she certainly "suggest[ed] guilt." The lower court's insistence that this is not defamation *per se* because Red Rose Rescue has not been "officially designated as a terrorist organization" is a straw man argument. As

- 12 -

Defendant James stated (and quoted by the district court), "I refer to them as terrorists because of their activities"—*activities that Defendant James considers criminal*. How is this not defamation *per se*? As the district court noted, "charging [the] plaintiff with a serious crime" is defamation *per se*, and so are statements "that tend to injure another person in his or her trade, business, or profession." (Mem.-Decision & Order at 25 [quoting *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011)], R.15, A-68). The lower court's decision must be reversed.

## III.  Statement of Facts.

Plaintiffs Miller and Abdalla are pro-life based on their sincerely held religious beliefs, and they are active members of Red Rose Rescue. Plaintiffs engage in peaceful, nonviolent, First Amendment activity such as sidewalk counseling, holding pro-life signs, and distributing pro-life literature pursuant to their association with Red Rose Rescue. Plaintiffs also provide financial support to the organization. Plaintiffs abhor all violence, including the violence of abortion. (Compl. ¶¶ 9-11, 14-21, R.1, A-7, 8, 9).

Plaintiff Miller is publicly known as a national leader of Red Rose Rescue, and Plaintiff Abdalla speaks to the media on behalf of Red Rose Rescue. Thus, **both Plaintiffs are publicly known as people who directly associate with Red Rose Rescue**. (*Id*. ¶¶ 12-14, 20, 30 [emphasis added], A-7, 8, 9, 11).

A Red Rose Rescue, *properly understood in light of known and verifiable facts,*

- 13 -

*never involves violence* nor conduct that is proscribed by the Freedom of Access to Clinic Entrances Act (FACE) (18 U.S.C. § 248), or any state counterpart, or any state law proscribing terrorism. (Compl. ¶¶ 12-14 [emphasis added], R.1, A-7, 8).

On June 8, 2023, Defendant James held a public press conference announcing a new *civil* lawsuit filed by the State of New York and the Attorney General against *Red Rose Rescue*, Christopher Moscinski, Matthew Connolly, William Goodman, Laura Gies, John Hinshaw, and *John and Jane Does*, alleging civil violations of FACE and the New York State version of this statute (the New York Clinic Access Act, N.Y. Civ. Rights Law § 79-m). This civil lawsuit principally seeks a 30-foot buffer zone around abortion centers. (Compl. ¶ 28, R.1, A-11).

During the press conference, Defendant James declared that those who associate with Red Rose Rescue are "terrorists," and she declared that Red Rose Rescue is a "terrorist group." (*Id*. ¶ 31, A-11). Indeed, at the close of her press conference, Defendant James doubled down and declared that Red Rose Rescue is in fact a "terrorist group." (*See id*. ¶ 33 [citing website where video of press conference was published and remains published to this date], A-12).

The civil lawsuit contains no allegations of terrorism[9] because Red Rose Rescue participants (including Plaintiffs) never engage in acts of terrorism. That is, they are not "terrorists" nor is Red Rose Rescue a "terrorist group." Consequently, Defendant

_____

[9] As noted previously, this is important because it shows that Defendant James' defamatory statements at the press conference are not immunized from challenge.

- 14 -

James' defamatory and injurious statements were not a fair and true report of any judicial proceeding, legislative proceeding, or other official proceeding. (*Id*. ¶ 29, A-11). Moreover, Defendant James' declarations are provably false.

Defendant James' false and defamatory remarks were of and concerning Plaintiffs as Plaintiffs are publicly associated with Red Rose Rescue. (*Id*. ¶¶ 9, 12, 13, 16, 19, 20, 31, A-7, 8, 9, 11). Indeed, the statements were made and published in such a way that allows for easy identification of the individuals within the group. A reader/viewer/listener could reasonably understand that the false and defamatory statements about Red Rose Rescue include Plaintiffs. (*Id*. ¶ 32, A-11). For example, a simple Internet search for "Red Rose Rescue" reveals a picture of Plaintiff Miller on the organization's homepage. *See* https://www.redroserescue.com/ (last visited Oct. 27, 2023). And while Plaintiff Miller was not a named *defendant* in the lawsuit, *she was expressly named in the allegations* of the complaint, and *she was personally served with a copy of the complaint by Attorney General James' office as the agent for Red Rose Rescue*.[10] (Compl. ¶ 30, R.1, A-11). In fact, in the civil lawsuit—the basis for the press conference—Defendant James states in multiple paragraphs of her complaint that Plaintiff Miller is a "*member*" of "*Red Rose Rescue*." (*See* Muise Decl., Ex. A [Civil Complaint ¶¶ 69, 76, 89] at Ex. 1, R.10-1, A-34, 36, 38). The civil lawsuit also names "John and Jane Does" as defendants "who are active in" Red Rose

---

[10] The assertion that Plaintiffs were not named in that litigation is misleading.

Rescue.  (*Id.* [Civil Complaint at 1], A-24).  Plaintiff Abdalla is "active" in Red Rose Rescue.[11]  (*See* Compl. ¶¶ 16-20, R.1, A-8, 9).

Defendant James' false and defamatory statements that those associated with Red Rose Rescue are "terrorists" and that Red Rose Rescue itself is a "terrorist group" are published and remain published on the Attorney General's website (https://ag.ny.gov/attorney-general-james-sues-militant-anti-abortion-group-invading-clinics-and-blocking-access) and have been republished by multiple media sources, including, *inter alia*, the *Washington Examiner* (https://www.washingtonexaminer.com/policy/healthcare/new-york-ag-anti-abortion-terrorist-lawsuit), and the *Washington Times* (https://www.washingtontimes.com/news/2023/jun/8/letitia-james-sues-block-pro-life-terrorists-abort/).  (Compl. ¶ 33, R.1, A-12).  As noted, these defamatory statements are part of official public records maintained by Defendant James and her office.  (*See id.; see also* R.9 [DVD submitted by Defendant containing video of the press conference]).

Defendant James held a public press conference to ensure that her false and defamatory statements were widely reported and repeated as she intended these statements to cause harm to pro-lifers, including Plaintiffs.  Defendant James' defamatory attack on pro-lifers had no legitimate governmental purpose; it was an

---

[11] Accordingly, the allegations make clear that Defendant James' injurious and defamatory statements were "of or concerning" Plaintiffs as a matter of fact and law.

abusive use of government authority and power.  (Compl. ¶¶ 34-35, R.1, A-12).

As the chief law enforcement officer of New York, Defendant James is in a position to know that Red Rose Rescue is not a "terrorist group" and that the pro-lifers who associate with Red Rose Rescue, including Plaintiffs, are not "terrorists."  Indeed, if Defendant James had any facts to substantiate these false accusations of criminal activity, she would have brought a criminal complaint for engaging in terrorist activity and not a civil action seeking a mere 30-foot buffer zone.  Defendant James has not brought a criminal complaint against Red Rose Rescue and those who associate with Red Rose Rescue for committing terrorism (or any other crime of violence) as no such facts exist to do so, and *Defendant James knows it*.  (Compl. ¶¶ 36, R.1, A-12, 13).

Terrorism is a crime punishable under the New York Penal Law.  *See* N.Y. Penal Law §§ 490.00, *et seq*.  It is widely considered to be *one of the most heinous criminal acts*—and this point is reinforced yet again by the recent terrorist attacks on Israel.  The legislative findings in support of New York's penal law proscribing terrorism emphasize this point.  (*See* Compl. ¶ 37 ["[T]errorism is a serious and deadly problem that disrupts public order and threatens individual safety both at home and around the world.  Terrorism is inconsistent with civilized society and cannot be tolerated. . . .  Accordingly, the legislature finds that our laws must be strengthened to ensure that terrorists, as well as those who solicit or provide financial and other support to terrorists, are prosecuted and punished in state courts with appropriate

severity."] [quoting N.Y. Penal Law § 490.00], R.1, A-13). As the New York Attorney General, Defendant James is well aware of the New York Penal Law and its harsh treatment of terrorism. (Compl. ¶ 37, R.1, A-13).

Defendant James' public dissemination of false information has had a chilling effect on Plaintiffs' rights to freedom of speech and expressive association, and the defamatory statements have had a chilling effect on the rights to freedom of speech and expressive association of other pro-lifers associated with Red Rose Rescue. The false and defamatory statements by Defendant James have caused, and will continue to cause, irreparable harm to Plaintiffs. Defendants James' false and defamatory statements have also caused Plaintiffs to suffer humiliation and a loss of reputation. (*Id*. ¶¶ 40, 42, A-14).

By branding religious opponents (pro-lifers) as "terrorists," Defendant James seeks to officially censor, correct, and/or condemn certain religious beliefs, views, and ideas. Her false statements were designed to chill the exercise of constitutional rights by pro-lifers such as Plaintiffs and to chill those who would associate with Red Rose Rescue from exercising their constitutional rights. (*Id*. ¶¶ 43-44, A-14, 15).

Defendant James' identification of pro-lifers as "terrorists" provides a basis for government officials to abuse their positions of power by seeking to stifle certain religious beliefs and views. It also provides adversaries, such as Planned Parenthood and others pro-abortion extremists who were invited to participate in the press

conference with Defendant James, with a government sponsored and endorsed basis for making and perpetuating false claims about pro-lifers, causing further harm to Plaintiffs. (*Id*. ¶ 45, A-15). Indeed, Defendant James' labeling of pro-lifers as "terrorists" creates a basis for government investigation, surveillance, punishment, condemnation, and other disfavored treatment, and it has tarnished Plaintiffs' public reputation and subjects Plaintiffs to public retribution. (*Id*. ¶¶ 46, 50, A-15, 16).

The purpose and effects of Defendant James' actions are to silence religious opposition to the pro-abortion policies that she supports; to marginalize pro-lifers by officially and pejoratively labeling them as "terrorists"; to deter and diminish support for pro-lifers; and to provide a government-sanctioned justification for officials, including law enforcement officials, to harass and target religious opponents, thereby creating a deterrent effect on religiously-motivated speech and views and the expressive association of pro-lifers, including Plaintiffs. (*Id*. ¶ 48, A-15, 16).

Defendant James' actions brand pro-lifers such as Plaintiffs as criminals on account of their religious beliefs and viewpoints, subjecting them to governmental scrutiny, investigation, surveillance, condemnation, and intimidation, which have a deterrent effect on Plaintiffs' constitutionally protected activities and their rights to freedom of speech and expressive association. (*Id*. ¶ 49, A-16).

Defendant James' challenged actions have the purpose and effect of deterring pro-lifers from associating with Red Rose Rescue and those involved with Red Rose

- 19 -

Rescue, including Plaintiffs, and deterring donors and volunteers from supporting the activities of Red Rose Rescue. Defendant James' actions also legitimize the illegitimate attacks against pro-lifers in the public eye. Consequently, the challenged actions harm Plaintiffs' constitutionally protected activities and interests. (*Id.* ¶¶ 51, 53, A-16, 17).

When Defendant James, the New York Attorney General, places pejorative labels on opponents who express religious beliefs and views contrary to those she espouses, she places the power of the state government, with its authority, presumed neutrality, and assumed access to all the facts, behind an appellation *designed* to reduce the effectiveness of the speech in the eyes of the public. (*Id.* ¶ 52, A-16).

Defendant James' actions were motivated by malice against pro-lifers, including Plaintiffs, and their religious objection to abortion, and they were made with hatred, ill will, and spite. Defendant James will continue to disseminate false information about Plaintiffs unless enjoined from doing so by this Court. (*Id.* ¶ 41, A-14).

In sum, the district court's decision cannot square with the statement of facts, which are taken directly from the Complaint.

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. This Court "review[s] *de novo* the district court's dismissal of an action for failure to state a claim

under Rule 12(b)(6) . . . [and] for lack of jurisdiction under Rule 12(b)(1)." *Bldg. Indus. Elec. Contractors Ass'n ex rel. United Elec. Contractors Ass'n v. City of N.Y.*, 678 F.3d 184, 187 (2d Cir. 2012). Dismissal is only appropriate if the complaint fails to state claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pursuant to Rule 8(a), the pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also id.* at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In reviewing the plausibility of a complaint, the court must accept factual allegations in the complaint as true and construe the pleading in the light most favorable to the nonmoving party. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor" when reviewing a motion to dismiss).

Defendant's Rule 12(b)(1) motion was a facial challenge to standing as it is

based on the allegations of the Complaint. "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . ., the plaintiff has no evidentiary burden. . . . The task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal citations, quotations, and punctuation omitted). Accordingly, when reviewing the district court's order granting Defendant's motion under 12(b)(1), this Court must accept as true all material factual allegations of the Complaint and draw all reasonable inferences in favor of Plaintiffs. *See id*. at 56-57 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.")). Moreover, "when evaluating standing, courts 'must assume that the party asserting federal jurisdiction is correct on the legal merits of his claim, that a decision on the merits would be favorable and that the requested relief would be granted.'" *Barry's Cut Rate Stores, Inc. v. Visa, Inc.*, No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 205335, at *134 (E.D.N.Y. Nov. 20, 2019) (quoting *Cutler v. United States HHS*, 797 F.3d 1173, 1179 (D.C. Cir. 2015)).

Upon application of the appropriate standard of review, this Court must reverse the district court's erroneous ruling. Indeed, a reasonable and objective review of the

district court's decision in light of the allegations in the Complaint and the appropriate application of the standard of review compels reversal of the lower court's patently wrong dismissal of this action.

## SUMMARY OF THE ARGUMENT

Plaintiffs have standing to advance their constitutional claims. Plaintiffs have suffered a cognizable injury to their right to freedom of speech, their right of expressive association, their right to the equal protection of the law, and their personal reputations (*i.e.*, stigmatization) that is fairly traceable to Defendant James' unlawful conduct and likely to be addressed by the requested relief. In other words, Plaintiffs have a personal stake in the outcome of this controversy, and they are entitled to have the courts decide the merits of their claims. Accordingly, this dispute is appropriately resolved through the judicial process.

Defendant James' injurious public declarations that those who associate with Red Rose Rescue are "terrorists" and that Red Rose Rescue itself is a "terrorist group" are "of and concerning" Plaintiffs, they are assertions of fact that are provably false, and they are defamatory *per se*.

Upon the proper application of the standard of review at the pleading stage, this Court must reverse the district court's erroneous decision dismissing this action.

- 23 -

## ARGUMENT

### I.  Plaintiffs Have Standing to Advance Their Claims.

In an effort to give meaning to Article III's "case" or "controversy" requirement, the courts have developed several justiciability doctrines, including standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (holding that an organization had standing to make a pre-enforcement challenge to a law that arguably infringed its political speech). "The doctrine of standing gives meaning to these constitutional limits by identify[ing] those disputes which are appropriately resolved through the judicial process." *Id.* (internal quotations and citation omitted).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. To invoke the jurisdiction of a federal court, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiffs satisfy this standard.

### A.  Personal Injury.

This Circuit has "repeatedly described [the injury-in-fact] requirement as a ***low threshold***," "which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotations and citations omitted) (emphasis added).

- 24 -

Plaintiffs are suffering a personal injury, and this injury is not simply a "subjective" chill on speech, which distinguishes this case from *Laird v. Tatum*, 408 U.S. 1, 10-11 (1972) (holding that subjective chill, "without more," was not sufficient for standing). Plaintiffs have also alleged that Defendant's "terrorist" and "terrorist group" labelling has harmed their public reputation and their pro-life efforts. "As a matter of law, reputational harm is a cognizable injury in fact." *NCAA v. Governor of N.J.*, 730 F.3d 208, 220 (3d Cir. 2013) (citing *Meese v. Keene*, 481 U.S. 465 (1987)); *Gully v. NCUA Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003) (stating that "[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing"); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 542-43 (3d Cir. 2007) (finding standing to challenge a sanction that "affect[s] [the plaintiff's] reputation"); *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003) ("Case law is clear that where reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III standing to challenge that action."). The district court's effort to distinguish these cases in unavailing. Moreover, the court impermissibly converted the "low threshold" injury requirement into a "high threshold" *evidentiary* requirement at the pleading stage. The fact that the district court repeatedly stated that it was "unpersuaded" by the allegations demonstrates that the court was misapplying the law. *See Twombly*, 550 U.S. at 555 (stating that a claim survives a motion to dismiss if its "[f]actual

- 25 -

allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)"); *see also id*. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

It is well established that "where claims of a chilling effect are accompanied by concrete allegations of reputational harm, the plaintiff has shown injury in fact." *Parsons v. United States DOJ*, 801 F.3d 701, 711-12 (6th Cir. 2015) (citing *Meese* and distinguishing *Laird v. Tatum*, as "rejecting argument that the plaintiffs' First Amendment rights were being 'chilled by the mere existence, *without more*, of [the Army's] investigative and data-gathering activity'"); *see also Parsons*, 801 F.3d at 712 ("Stigmatization also constitutes an injury in fact for standing purposes.").

Thus, the "*concrete* allegations of reputation harm" in addition to the chilling effect caused by Defendant's actions as set forth in the factual allegations of the Complaint are sufficient to show injury in fact and for the district court to exercise its jurisdiction to hear and decide this case. The district court's conclusion otherwise is incorrect.

Plaintiffs' standing in this case is affirmed by *Meese v. Keene*, 481 U.S. 465 (1987). In *Meese*, the plaintiff, a politician, sued to prevent the government from

- 26 -

designating as "political propaganda" certain films he was sponsoring. The Court held that the plaintiff had standing to challenge this designation as a violation of the First Amendment because the plaintiff's showing of the films would cause injury to his reputation. *Id*. However, because the Court believed that the term "political propaganda" was "neutral," "evenhanded," and without any "pejorative connotation," it concluded that the act placed "no burden on protected expression" and was thus constitutional. *Id*. at 480. Consequently, it logically follows that had the Court determined that this official designation was *not* "neutral," "evenhanded," or without any "pejorative connotation," then a constitutional violation would have occurred. As the dissent points out, when the government places pejorative labels on those engaging in the right to freedom of speech, "[i]t places the power of the Federal Government, with its authority, presumed neutrality, and assumed access to all the facts, behind an appellation *designed* to reduce the effectiveness of the speech in the eyes of the public" in violation of the First Amendment. *Id*. at 493 (Blackmun, J., joined by Brennan, J., and Marshall, J., dissenting); *see also Am. Freedom Law Ctr., Inc. v. Nessel*, No. 1:19-cv-153, 2020 U.S. Dist. LEXIS 60622, at *22-24 (W.D. Mich. Jan. 15, 2020) (concluding that the plaintiff organization had standing to advance its constitutional claims and that its allegations challenging the Michigan Attorney General's false "hate group" designation of the organization stated a plausible claim under the First Amendment).

- 27 -

This is precisely the situation presented here. Through the labelling of Plaintiffs as "terrorists" and belonging to a "terrorist group"—terms that plainly have pejorative meaning and are defamatory—Defendant James has given the government's imprimatur to and official endorsement of the *labeling of Plaintiffs* and their organization, Red Rose Rescue, as *violent*, criminal threats. By placing pejorative labels on Plaintiffs, the pro-life group (Red Rose Rescue) with which they associate, and thus their concomitant pro-life activities,[12] Defendant James has "place[d] the power of the Government, with its authority, presumed neutrality, and assumed access to all the facts, behind an appellation *designed* to reduce the effectiveness of speech in the eyes of the public" in violation of the First Amendment. *Fed. Election Com. v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 255 (1986) ("The fact that the statute's practical effect may be to discourage protected speech is sufficient to characterize [it] as an infringement on First Amendment activities.").

As *Meese* and other cases make clear, Defendant's labelling of Plaintiffs as "terrorists" and belonging to a "terrorist group" is sufficient to establish Plaintiffs' standing to advance this challenge. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139 (1951) (holding that charitable organizations designated as "Communist" by the Attorney General had standing to challenge their designations

---

[12] As Defendant James states in the video, "I refer to them as terrorists because of their activities." (*See* https://ag.ny.gov/attorney-general-james-sues-militant-anti-abortion-group-invading-clinics-and-blocking-access).

because of, *inter alia*, "damage [to] the reputation of those organizations in their respective communities"); *see also United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999) (stating that "being put on a blacklist . . . is treated as immediately redressible harm because it diminishes (or eliminates) the opportunity to practice one's profession even if the list . . . does not impose legal obligations"); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999) (holding that a student had standing to challenge a rule requiring that he be identified as disabled because such a label could sour the perception of him by "people who can affect his future and his livelihood"). Plaintiffs satisfy the "low threshold" injury-in-fact requirement. It's not a close call.

### B.    Fairly Traceable.

"The 'causal connection' element of Article III standing, *i.e.*, the requirement that the plaintiff's injury be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court,' *does not create an onerous standard*. For example, it is a standard lower than that of proximate causation." *Carter*, 822 F.3d at 55 (internal quotations and citation omitted) (emphasis added). Here, the alleged harm to Plaintiffs is fairly traceable to the actions of Defendant James as it is *her actions* that are the very basis for this lawsuit.

### C.    Likely to Be Redressed.

For the reasons stated by the Sixth Circuit in *Parsons v. United States DOJ*, 801

F.3d 701 (6th Cir. 2015), the alleged harm in this case is redressible.  Per the Sixth

Circuit:

> The Agencies argue that the alleged reputational harm and chilling effect
> would not be remedied by an order setting aside the 2011 [National Gang
> Intelligence Center or] NGIC Report because information about criminal
> activity performed by Juggalo subsets is available from a variety of other
> sources, including state and local law enforcement in the locations where
> the Juggalos were allegedly injured. . . .  In *Meese*, the defendant, the
> Attorney General, espoused an analogous argument—that enjoinment of
> the DOJ's label of certain films as "political propaganda" would not
> stem negative reaction to the plaintiff's exhibition of the films. . . .  The
> Supreme Court disagreed, articulating that the harm to plaintiff occurred
> because "*the Department of Justice has placed the legitimate force of its
> criminal enforcement powers behind the label of 'political
> propaganda.*'" . . .  The Juggalos in this case **also suffer alleged harm
> due to the force of a DOJ informational label.**  While the 2011 NGIC
> Report is not the designation itself, it reflects the designation and
> includes an analytical component of the criminal activity performed by
> Juggalo subsets, classifying the activity as gang-like.  As in *Meese*, "[***a***]
> ***judgment declaring the*** [**action in *question***] ***unconstitutional would
> eliminate the need to choose between*** [***First Amendment-protected
> activity***] ***and incurring the risk that public perception of this criminal
> enforcement scheme will harm appellee's reputation***."
>
> The Agencies also assert that an order declaring the 2011 NGIC Report
> unconstitutional would not alleviate the alleged harm entirely because
> the information on Juggalo activity is available through the
> aforementioned alternate channels.  But it need not be likely that the
> harm will be *entirely* redressed, as partial redress can also satisfy the
> standing requirement.  *See Meese*, 481 U.S. at 476 ("enjoining the
> application of the words 'political propaganda' to the films would at
> least partially redress the reputational injury of which appellee
> complains"); [*Friends of the Earth, Inc. v.*] *Laidlaw* [*Envtl. Servs., Inc.*,
> 528 U.S. 167, 185 (2000)] (finding civil penalties sufficient to satisfy

- 30 -

redressability noting that they have at least "*some* deterrent effect") (emphasis added). "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of a suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Laidlaw*, 528 U.S. at 185-86. An order declaring the 2011 NGIC Report unconstitutional and setting it aside would abate the reflection of Juggalo criminal activity as gang or gang-like by the Agencies. . . . *The declaration the Juggalos seek would likely combat at least some future risk that they would be subjected to reputational harm and chill due to the force of the DOJ's criminal gang or gang-like designation*.

*Parsons*, 801 F.3d at 716-17 (internal citations omitted) (emphasis added).

A judicial determination that Defendant's false statements violate federal law would reassure Plaintiffs and those who associate with Red Rose Rescue that they could freely participate in their constitutionally protected activities without being denigrated and labeled as "terrorists" or belonging to a "terrorist group" by the government, appearing in government records as "terrorists" or belonging to a "terrorist group," or even being threatened by the government with investigation because of their association with Red Rose Rescue. Furthermore, the requested relief will help repair Plaintiffs' public reputation—a reputation that Defendant James purposely tarnished through her false and injurious statements.

Accordingly, the Court could redress the harm by granting judgment in Plaintiffs' favor and declaring, at a minimum, that Defendant James' false and injurious labeling of Plaintiffs violates their rights, as set forth in the Complaint. The Court could also enter an order enjoining Defendant James from making such false

and harmful public statements about Plaintiffs in the future. *See, e.g., Rooks v. Krzewski*, No. 306034, 2014 Mich. App. LEXIS 604, at *91 (Mich. Ct. App. Apr. 3, 2014) ("Numerous other courts, both federal and state, have held that a trial court may enjoin a defendant from making defamatory statements after there has been a determination that the speech was, in fact, false.") (citing cases). And the Court could issue an order expunging all official government records (including removing the video from the government's official website) that label Plaintiffs as "terrorists" and Red Rose Rescue as a "terrorist group." *See Smith v. Nixon*, 807 F.2d 197, 204 (D.C. Cir. 1986) (stating that "a court may order expungement of records in an action brought . . . directly under the Constitution, without violating the intricate statutory provisions that purport to be the 'exclusive' means by which [government records] may . . . be alienated or destroyed").

In sum, "[a] judgment declaring the [action in question] unconstitutional would eliminate the need to choose between [First Amendment-protected activity] and incurring *the risk that public perception* of this criminal enforcement scheme will harm [Plaintiffs'] reputation." *See Parsons*, 801 F.3d at 717 (emphasis added). The declaration Plaintiffs "seek would likely combat at least some future risk that they would be subjected to reputational harm and chill due to the force of [Defendant James'] designation." *Id*. Plaintiffs have established standing to advance their claims.

**D.     Plaintiffs Have Standing to Advance Their Constitutional Claims.**

A review of the constitutional claims in light of the above discussion confirms that Plaintiffs have standing to advance these claims.

**1.     First Amendment.**

First Amendment freedoms "are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. Little Rock*, 361 U.S. 516, 523 (1960); *see also NAACP v. Button*, 371 U.S. 415, 433 (1963) (stating that First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society," and "[b]ecause [these] freedoms need breathing space to survive, government may regulate in the area only with narrow specificity"). As the Court stated in *NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958), "state action which *may have the effect* of curtailing the freedom to associate is subject to the closest scrutiny." (emphasis added). Indeed, using the power and authority of the Office of the Attorney General to pejoratively label peaceful citizens, such as Plaintiffs, solely because of their opposition to abortion does not promote a legitimate government interest, and it has the calculated *and intended* effect of suppressing constitutional freedoms in violation of the First Amendment. *Cf. NAACP v. Ala.*, 357 U.S. at 461 ("In the domain of these indispensable liberties, whether of speech, press, or association, the decisions of this Court recognize that abridgment of such rights, *even though unintended*, may inevitably follow from varied forms of

- 33 -

governmental action.")  (emphasis added).

By labelling Plaintiffs as "terrorists" and members of a "terrorist group" because of their opposition to abortion, Defendant James has violated Plaintiffs' fundamental rights.  This principle was affirmed in *Meese v. Keene*, 481 U.S. 465 (1987).  The reasoning in *Meese* is dispositive on the issue of whether the Complaint states plausible claims for relief and, more to the point for purposes of this appeal, it is dispositive on the issue of whether Plaintiffs have standing to advance their claims. *See supra*.  *Meese* compels the reversal of the district court.

Additionally, as noted, Plaintiffs are members of Red Rose Rescue, and they associate with this organization for the purpose of advancing their pro-life beliefs and engaging in constitutionally protected activity.  "Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs.  While the freedom of association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition." *Healy v. James*, 408 U.S. 169, 181 (1972) (citations omitted).  "Freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech." *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998) (citing *NAACP v. Ala.*, 357 U.S. at 460).  "[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational,

- 34 -

religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). And "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as [the Supreme] Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Ala.*, 357 U.S. at 460.

"Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and ***state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny***." *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 197 (3d Cir. 1990) (emphasis added); *Bates*, 361 U.S. at 523 (stating that "[f]reedoms such as these ***are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference***") (emphasis added).

As the D.C. Circuit stated in *Clark v. Library of Congress*, 750 F.2d 89, 94 (D.C. Cir. 1984), "[e]xacting scrutiny is especially appropriate where the government action is motivated solely by an individual's lawful beliefs or associations, for government action so predicated ***is imbued with the potential for subtle coercion of the individual to abandon his controversial beliefs or associations***." (emphasis added). This point was more recently echoed by the Supreme Court:

> When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. ***The risk of a chilling effect on association is enough, because First Amendment***

*freedoms need breathing space to survive*.

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021) (quotations and citation omitted) (emphasis added).

In this case, the challenged actions of Defendant James deter protected First Amendment activity.[13] Plaintiffs have standing in this case.

### 2. Equal Protection.

When the government treats an individual disparately "as compared to similarly situated persons and that such disparate treatment . . . burdens a *fundamental right*, targets a suspect class, or has *no rational basis*," such treatment violates the equal protection guarantee of the Fourteenth Amendment. *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 256 (6th Cir. 2015) (internal quotations and citation omitted) (emphasis

---

[13] When the chief law enforcement officer for the state labels you a "terrorist" and belonging to a "terrorist group," the threat of being subject to government surveillance and investigation is real, particularly since the Attorney General possesses the power to do so. (*See* Compl. ¶¶ 45-46, R.1, A-15). And this threat of investigations and surveillance also chills the exercise of First Amendment activity. *See, e.g., DeGregory v. Att'y Gen. of N.H.*, 383 U.S. 825, 829 (1966) ("Investigation is a part of lawmaking and the First Amendment, as well as the Fifth, stands as a barrier to state intrusion of privacy."); *Gibson v. Fla. Legislative Comm.*, 372 U.S. 539, 560-61 (1963) ("We deal here with the authority of a State to investigate people, their ideas, their activities. . . . When the State or Federal Government is prohibited from dealing with a subject, it has no constitutional privilege to investigate it.") (Douglas, J., concurring); *NAACP v. Ala.*, 357 U.S. 449; *Barenblatt v. United States*, 360 U.S. 109, 126 (1959) ("The provisions of the First Amendment . . . of course reach and limit . . . investigations."); *Socialist Workers Party v. Att'y Gen.*, 419 U.S. 1314, 1319 (1974) (noting the dangers inherent in investigative activity that "threatens to dampen the exercise of First Amendment rights"); *Clark*, 750 F.2d 89 (applying strict scrutiny in a case challenging the federal government's investigation into an employee's political beliefs and associations).

- 36 -

added). "In determining whether individuals are 'similarly situated,' a court should not demand exact correlation, but should instead seek relevant similarity." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (internal quotation marks omitted). Such disparate treatment is "subject to strict scrutiny." *Bible Believers*, 805 F.3d at 256.

The rights to freedom of speech and association are "fundamental," *see supra; see also Bible Believers*, 805 F.3d at 256 ("Freedom of speech is a fundamental right."), and disparate treatment that burdens these rights violates the equal protection guarantee of the Fourteenth Amendment, *see id*. at 256-57.

Targeting Plaintiffs for adverse treatment based on their opposition to abortion and their association with a pro-life group that too opposes abortion on religious grounds (Red Rose Rescue) violates the equal protection guarantee of the Fourteenth Amendment. This principle of law was articulated in *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92 (1972). As stated by the Court, "[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id*. at 96. In other words, when a government official targets an organization or individuals associated with an organization for disparate treatment because the official opposes the beliefs of the organization or the individual, the Equal Protection Clause stands as a barrier to

- 37 -

such targeting.  As noted in the Complaint,

> Defendant James largely ignores the *violent* crime that is ravaging New York, and she has failed to take any legal action against the *violent* acts committed by Antifa and the Black Live Matter movement, but yet she weaponizes her office to target peaceful pro-lifers because she is a pro-abortion extremist and pro-lifers are her opponents while Antifa and Black Lives Matter are her allies.

(Compl. ¶ 39, R.1, A-14).

In sum, Defendant James' actions were motivated by an intent to unlawfully discriminate on the basis of Plaintiffs' beliefs in opposition to abortion.  (*See, e.g.,* Compl. ¶¶ 24, 41, 48-50 [describing Defendant's intent and motivations], R.1, A-10, 14, 15, 16).  Plaintiffs have standing to advance their claim under the Equal Protection Clause.

In the final analysis, the district court's "standing" decision is patently wrong and should be reversed.

## II. Defendant James' Statements Are Actionable as Defamation.

As discussed above, the district court held that Defendant James' public declarations that Plaintiffs are "terrorists" and that they belong to a "terrorist organization" are not actionable as defamation under New York law.  The court is mistaken.

### A. Defendant's Statements Are Actionable as Defamation *Per Se*.

A defamatory statement is "one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism,

degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. N.Y. Evening Journal*, 262 N.Y. 99, 186 N.E. 217, 218 (NY 1933)).

"The four categories of statements that have historically constituted slander *per se* in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) (citation omitted). Accordingly, "[a]ccusing someone of a serious crime is defamatory *per se*. . . . A crime is 'serious' for the purposes of defamation if it is punishable by imprisonment or is 'regarded by public opinion as involving moral turpitude.'" *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at *27 (S.D.N.Y. June 1, 2021). "Terrorism" plainly fits this "serious crime" category. As New York Penal Law acknowledges,

> [T]errorism is a serious and deadly problem that disrupts public order and threatens individual safety both at home and around the world. Terrorism is inconsistent with civilized society and cannot be tolerated. . . . Accordingly, the legislature finds that our laws must be strengthened to ensure that terrorists, as well as those who solicit or provide financial and other support to terrorists, are prosecuted and punished in state courts with appropriate severity.

- 39 -

N.Y. Penal Law § 490.00.

Thus, falsely accusing Plaintiffs of being "terrorists" and belonging to a "terrorist group" is defamation *per se*. *See, e.g., Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App. 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation *per se*. We agree."); *Grogan v. KOKH, Ltd. Liab. Co.*, 256 P.3d 1021, 1030 (Okla. Civ. App. 2011) ("It is undisputed that Grogan is not a terrorist, and that portrayal of him as a terrorist would be highly offensive to a reasonable person."). It is undisputed that Plaintiffs are not terrorists and Red Rose Rescue is not a terrorist group. Contrary to the district court's conclusion, Defendant's accusations are factual statements that are provably false. And portraying Plaintiffs as terrorists is highly offensive to any reasonable person.

The defamatory nature of these false accusations is particularly evident here as they were publicly made by the Attorney General of New York—the chief law enforcement officer of the state. The accusation is not from a private individual with no law enforcement authority making a comment on a blog post or in an environmental newsletter. Thus, this case is nothing like the factual situations in *LeBlanc v. Skinner*, 955 N.Y.S.2d 391 (N.Y. App. Div. 2012) (finding no defamation based on "terrorist" accusation found in a blog post authored by a private individual), and *Lukashok v. Concerned Residents of North Salem*, 554 N.Y.S.2d 39, 40 (N.Y.

App. Div. 1990) (finding no defamation based on "terrorist" accusation found in an environmental newsletter).[14] To suggest that these factual contexts are similar to this case (as the district court does and as Defendant James argued below with regard to *LeBlanc*) is wrong.[15] And it exposes the error of the district court's conclusion that the statements in this case were also simply opinion and not actionable defamation. The case at bar is nothing like *LeBlanc*, which involved a "terrorist" accusation made by citizens on a publicly accessible blog. The context of *LeBlanc* largely involved a personal dispute between the parties. Moreover, while the *LeBlanc* court concluded that "[s]uch a statement was likely to be perceived as 'rhetorical hyperbole, a vigorous epithet,'" it noted with importance that "[t]his conclusion is especially apt in the digital age, where it has been commented that readers give less credence to allegedly defamatory Internet communications than they would to statements made in other milieus." *LeBlanc*, 955 N.Y.S.2d at 400.

In *Lukashok*, the court found that statements *published in an environmental newsletter* stating that plaintiff "has resorted to what can only be called terrorism *by suing every member of the Town Board and Planning Board personally*" was

---

[14] The district court was dismissive of the cases cited by Plaintiffs which held that a "terrorist" accusation was actionable as defamation. (Mem.-Decision & Order at 26, R.15, A-69). And, as noted above, the only two cases relied on by the lower court in which a "terrorist" accusation was found to be opinion and not defamatory were *LeBlanc* and *Lukashok*—neither or which supports the district court's decision.

[15] (*See* Mem.-Decision & Order at 20, 23, 24 [citing *LeBlanc*], R.15, A-63, 66, 67; *id.* at 21, 22, 26, 27 [citing *Lukashok*], A-64, 65, 69, 70).

"nonactionable opinion." The publishers of the alleged defamatory statements were not law enforcement and the reference was to the filing of lawsuits, not violent conduct. As stated by the court, "We find that the statements by the defendants were 'pure opinion' and did not rest on any undisclosed facts. Moreover, an examination of the full context of the communication indicates that the remarks were merely figurative and did not accuse the plaintiff of criminal activity." *Lukashok*, 554 N.Y.S.2d at 40.

Here, Defendant James, the New York Attorney General, called a press conference to address Red Rose Rescue and to issue official statements from her office about this organization and those who associate with it. By doing so, she placed the power of the state government, with its authority, presumed neutrality, and assumed access to all the facts, behind a false accusation *designed* to target pro-lifers associated with Red Rose Rescue. (Compl. ¶ 52, R.1, A-16). During her remarks, she made it clear that she was referring to the "activities" of those who associate with Red Rose Rescue—activities that she described as criminal.[16] And she made these accusations with actual malice. (Compl. ¶¶ 2, 12-14, 24, 41, R.1, A-5, 6, 7, 8, 20, 14).

In sum, it is wrong as a matter of facts and law to conclude that Defendant's

---

[16] Defendant acknowledges, as the district court noted, that terrorist activities include "*the use of violent action in order to achieve political aims or to force a government to act.*" (Mem.-Decision & Order at 22 [emphasis added], R.15, A-65). And Defendant James described Red Rose Rescue participants as those who "'engage[] in coordinated and repeated *illegal conduct*.'" (*See id*. at 23 [emphasis added], A-66).

statements are not actionable.  In fact, they constitute defamation *per se*.

### B.    Defendant's Defamatory Statements Were "of and Concerning" Plaintiffs.

While the district court expressly did not base its decision on finding against

Plaintiffs on this prong of the defamation analysis, it is nonetheless important to

demonstrate that Plaintiffs satisfy it.

As stated by this Court:

> a defamation plaintiff must allege that the purportedly defamatory
> statement was "of and concerning" him or her, *i.e.*, that "[t]he reading
> public *acquainted with the parties and the subject*" would recognize the
> plaintiff as a person to whom the statement refers.  *Carlucci v.
> Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885, 442 N.E.2d 442,
> 456 N.Y.S.2d 44 (1982); *see also New York Times Co. v. Sullivan*, 376
> U.S. 254, 288-91 (1964).  Whether a plaintiff has satisfied this
> requirement is typically resolved by the court at the pleading stage.
> *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).
> "'It is not necessary that the world should understand the libel; it is
> sufficient if those who know the plaintiff can make out that she is the
> person meant.'"  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)
> (quoting *Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 651 (2d Cir.
> 1966)) (alteration omitted).

*Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017).  Here, those

acquainted with Plaintiffs would recognize them as associates of Red Rose Rescue

and thus individuals who engage in pro-life activities pursuant to this association.

That is, the reading public acquainted with Plaintiffs and the subject would recognize

Plaintiffs as the "terrorists" and members of the "terrorist group" referred to by

Defendant.  In fact, Defendant James knows for certain that Plaintiff Miller is

associated with Red Rose Rescue as she said so in the civil complaint she filed against the organization, and her office officially served Plaintiff Miller with the civil lawsuit as the principal agent for Red Rose Rescue. And as noted, the civil lawsuit was the basis for calling the press conference in the first instance.

Moreover, "[i]n order to overcome the group libel doctrine, the plaintiff must demonstrate that 'the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the member.'" *Church of Scientology Int'l v. Time Warner*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992) (quoting Restatement (Second) of Torts, § 564A(b)). Here, the circumstances of the publication (the civil lawsuit against Red Rose Rescue and certain individuals associated with Red Rose Rescue, the identification of Plaintiff Miller as a member of the organization in the civil complaint, and officially serving Plaintiff Miller with the civil complaint as the principal agent for Red Rose Rescue) demonstrate that the group libel doctrine does not preclude this action. *See also Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 790 (N.Y. App. Div. 1981) ("In contrast to the treatment of an individual in a large group which has been defamed, an individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group. . . . Because the group is small and includes few individuals, reference to the individual plaintiff reasonably follows from the statement and the question of reference is left for the jury.") (citation

- 44 -

omitted).  With regard to Plaintiff Abdalla, as alleged in the Complaint, she is actively and publicly involved with Red Rose Rescue, including doing media interviews, and, therefore, "is publicly known as someone who is associated with Red Rose Rescue." (Compl. ¶¶ 19, 20, R.1, A-9).  In sum, the defamatory statements were "of and concerning" Plaintiffs.

## CONCLUSION

The Court should reverse the district court and permit this case to proceed to the merits.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
David Yerushalmi, Esq.
Kate Oliveri, Esq. (P79932)

- 45 -

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a), the foregoing Brief is proportionally spaced, has a typeface of 14 points Times New Roman, and contains 11,518 words, excluding those sections identified in Fed. R. App. P. 32(f).

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.